UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AMANDA ABSHER,

        Plaintiff,

v.

REAMY BERLIN, DOROTHY JONES,
BRITTANY WICKS, and KIM SPICER,

        Defendants.
_____/

Case No. 1:20-cv-13383
Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION TO DISMISS, DENYING DEFENDANTS' FIRST MOTION TO DISMISS AS MOOT, AND DISMISSING PLAINTIFF'S EIGHTH AMENDMENT CLAIM**

This matter is before the Court pursuant to Defendants' Motion to Dismiss the Amended Complaint. ECF No. 14. Plaintiff alleges that she was abused, neglected, and otherwise mistreated in violation of the Eighth and Fourteenth Amendments while involuntarily committed to the Caro Center in Tuscola County, Michigan. Defendants seek to dismiss the Amended Complaint for failure to state a claim. For the reasons set forth below, Defendants' Motion to Dismiss the Amended Complaint will be granted in part and denied in part, and Plaintiff's Eighth Amendment claim will be dismissed.

**I.**

**A.**

From July 2017 to March 2019, Plaintiff Amanda Absher was involuntarily committed to the Caro Center, a psychiatric hospital located in Tuscola County and operated by the Michigan Department of Health and Human Services ("MDHHS"). ECF No. 12 at PageID.92. Plaintiff alleges that during her time at the Caro Center, she was physically abused and otherwise mistreated

by Defendants Reamy Berlin, Dorothy Jones, Brittany Wicks, and Kim Spicer, all employees of MDHHS.

First, Plaintiff claims that on several occasions, Defendant Berlin "restrained [P]laintiff for periods longer than allowable," "[r]estrained [her] without reason," and "[r]estrained [her] without performing necessary circulation checks, resulting in injury." *Id.* at PageID.93. Plaintiff also claims that Defendant Berlin forced her to take "unnecessary and unjustified medications throughout her confinement at the Caro Center" and that she "tormented" Plaintiff with harassing comments like "your parents should have belted you" and "you're my least favorite patient." *Id.*

Additionally, Plaintiff claims that on February 21, 2019, Defendant Jones "restrained Plaintiff by resting her entire body weight on Plaintiff's chest with her knee, causing Plaintiff to suffer a severe injury." *Id.* Plaintiff does not provide any further context about the incident but describes it as an "assault and battery." *Id.*

Plaintiff also alleges that on December 3, 2018, Defendants Wicks and Spicer "picked up Plaintiff's mattress while she was lying on it" and then "a chair as Plaintiff sat in it," in both instances causing "Plaintiff to be thrown to the ground." *Id.* Defendants Wicks and Spicer then allegedly "[d]ragged Plaintiff across the ground by her arms and legs causing severe injuries." *Id.* at PageID.93–94. Plaintiff reported this abuse, and Defendants Wicks and Spicer were suspended from work. *Id.* She claims that after they were suspended, Defendants Wicks and Spicer told her, "Thanks for the paid vacation." *Id.*

Plaintiff has offered no further details regarding the foregoing instances of abuse. She does, however, claim that at least some of the abuse was "substantiated" by the Caro Center's Office of Recipient Rights and Michigan Protection & Advocacy Service, Inc. *Id.* at PageID.92.

**B.**

On December 24, 2020, Plaintiff filed a two-count complaint under 42 U.S.C. § 1983 alleging cruel and unusual punishment in violation of the Eighth Amendment and denial of due process in violation of the Fourteenth Amendment. ECF No. 1. Defendants filed a joint motion to dismiss under Rule 12(b)(6) on April 2, 2021. ECF No. 9. Shortly thereafter, Plaintiff's counsel was substituted, and an amended complaint was filed. ECF Nos. 11, 12. The Amended Complaint added no new parties or claims but assigned each allegation of abuse to a specific Defendant. *See* ECF No. 12 at PageID.92–94.

The same day the Amended Complaint was filed, Plaintiff filed a response brief claiming that the Amended Complaint mooted Defendant's motion to dismiss. ECF No. 13 at PageID.100. Defendants thus filed a second joint motion to dismiss on May 5, 2021, raising the same arguments against the Amended Complaint.[1] ECF No. 14. Defendants' Motion to Dismiss has since been fully briefed by the parties. *See* ECF Nos. 17,18,19, 20.

**II.**

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading "must contain sufficient factual

---

[1] Because Plaintiff and Defendants agree that the Amended Complain mooted the first motion to dismiss, that motion will be denied as moot.

matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 679 (quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "[t]he plausibility standard is not akin to a 'probability requirement,' [] it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.

### A.

Plaintiff brings her claims under 42 U.S.C. § 1983. "To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (internal quotation marks omitted).

The Amended Complaint clearly satisfies the latter prong. Plaintiff alleges that, at all relevant times, Defendants were acting in their capacity as employees of MDHHS. ECF No. 12 at PageID.90–91. As employees of MDHHS, Defendants were acting under color of state law. *West v. Atkins*, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

The first prong, however, requires further elaboration. As a threshold matter, it is unclear whether Plaintiff's allegations are cognizable under the Eighth Amendment or the Fourteenth Amendment, and given the varying standards that might apply under each, the distinction between the two is more than academic. Accordingly, this Court must first decide whether the Eighth Amendment or the Fourteenth Amendment governs Plaintiff's rights in this case.

## 1.

In *Youngberg v. Romeo*, 457 U.S. 307 (1982), the mother of a mental health patient committed to a state institution brought action against various institution officials. She alleged that the officials had deprived her son of his rights under the Eighth and Fourteenth Amendments by restraining him for prolonged periods of time and failing to protect him from other patients. *Id.* at 309–11. Consistent with Eighth Amendment precedent, the district court instructed the jury that the defendants were only liable if they were deliberately indifferent to the son's serious medical or psychological needs. *Id.* at 312. The jury returned a verdict for the defendants. *Id.*

The Court of Appeals for the Third Circuit, however, reversed and held that the Fourteenth Amendment, not the Eighth, governed the rights of involuntarily committed individuals. *Id.* at 312–13. The Supreme Court affirmed, holding that the Fourteenth Amendment guaranteed civilly committed individuals the right to be free from unsafe conditions and unreasonable bodily restraint. *Id.* at 315–16. The Court further "conclude[d] that the jury was erroneously instructed on the assumption that the proper standard of liability was that of the Eighth Amendment." *Id.* at 325. As discussed in Section III.A.2., *infra*, the Court held that the proper standard was whether the conduct in question amounted to "a substantial departure from accepted professional judgment, practice, or standards." *Id.* at 323.

In *Lanman v. Hinson*, 529 F.3d 673 (6th Cir. 2008), the Sixth Circuit considered which Amendment would govern an excessive force claim arising within a psychiatric hospital. The plaintiff in *Lanman* represented the estate of a mental health patient who lost consciousness and eventually died after facility staff knelt on and otherwise restrained him during a physical altercation. *Lanman*, 529 F.3d at 677–79. The plaintiff argued that the staff's use of force was governed by the Fourth Amendment and its objective reasonableness test, while the defendants

maintained that the Fourteenth Amendment applied. *Id.* at 680. The Sixth Circuit explained that the applicability of each Amendment turns on the "status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Id.* at 680 (quoting *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)).

> If the plaintiff was a convicted prisoner at the time of the incident, then the Eighth Amendment deliberate indifference standard sets the standard for an excessive force claim. *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865. But if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. *Id.* at 395, 109 S.Ct. 1865. While this is seen most clearly in the law enforcement setting of arrests or investigatory stops, *Graham*, 490 U.S. at 395, 109 S.Ct. 1865, the Fourth Amendment also applies in the civil setting to seizures of individuals for psychiatric evaluations or involuntary confinement. *Monday v. Oullette*, 118 F.3d 1099, 1102–04 (6th Cir.1997). Thus, the Fourth Amendment reasonableness standard generally applies any time a government official seizes a free citizen with the purpose of potentially creating an involuntary custodial relationship with the State. Because the Fourth Amendment's protection against unreasonable seizures "seems primarily directed to the initial act of restraining an individual's liberty," *Phelps*, 286 F.3d at 301 (quoting *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir.1993)), we have stated that the standard applying to a pretrial detainee's excessive force claim "lies in the murky area between the Fourth and Eighth Amendments," *Phelps*, 286 F.3d at 300. At the very least, we have held that "the Fourteenth Amendment ... 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Phelps*, 286 F.3d at 300 (quoting *Graham*, 490 U.S. at 395 n. 10, 109 S.Ct. 1865). The Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials. *Id.*

*Lanman*, 529 F.3d at 680–81. The Sixth Circuit held that the right at issue in *Lanman*—the right to be free from unreasonable bodily restraint—"[was] not governed by the specific provisions of the Fourth Amendment" because the plaintiff had been restrained "for the purpose of medical treatment." *Id.* at 681. Therefore, because "[the plaintiff] was not in a situation where his rights were governed by the particular provisions of the Fourth Amendment," "the more generally applicable Fourteenth Amendment Due Process Clause applie[d] to his excessive force claim." *Id.*

Construed together, *Youngberg* and *Lanman* indicate that, in cases involving a civilly committed plaintiff, the right to be free from unsafe conditions and unreasonable restraint arises under the Fourteenth Amendment. Indeed, courts of this circuit have declined to apply the Eighth Amendment in favor of the Fourteenth Amendment in similar contexts. *See, e.g.*, *Johnson v. Williams*, No. 15-13856, 2017 WL 4236548, at *5 (E.D. Mich. Sept. 25, 2017) (holding that "heightened protection under the Fourteenth Amendment applie[d]" where adolescent who committed suicide was involuntarily removed from his home); *Tate v. Arbor Heights Cmty. Just. Ctr.*, No. 06-14877, 2008 WL 3318733, at *3 (E.D. Mich. Aug. 8, 2008) (holding that the "Fourteenth Amendment supplie[d] the proper constitutional standard" where involuntarily committed woman claimed that institution officials failed to protect her).

Defendants, however, note that the Sixth Circuit's decision in *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002), could be read as offering conflicting guidance. ECF No. 14 at PageID.116 n.2. There, a state psychiatric patient died of cardiopulmonary arrest and hyperthermia after complaining to staff about his symptoms. *Id.* at 839–40. The personal representative of his estate alleged deliberate indifference to a serious medical need under the Eighth Amendment and denial of due process under the Fourteenth Amendment. *Id.* at 841. The district court entered summary judgment for defendants on the Eighth Amendment claim but did not address the Fourteenth Amendment claim. *Id.*

On appeal, the Sixth Circuit analyzed each claim under a separate framework. With regard to the Eighth Amendment claim, the court reasoned that because "the decedent was involuntarily committed . . . for psychiatric treatment," he was "similarly situated to a prisoner with regard to the Eighth Amendment right to medical care." *Id.* at 842–43. After reviewing the record under the

deliberate indifference standard, the court affirmed summary judgment for some defendants and reversed for others. *Id.* at 844–47.

With respect to the Fourteenth Amendment claim, the Sixth Circuit considered whether, consistent with *Youngberg*, the staff's conduct was grounded in accepted professional judgment. *Terrance*, 286 F.3d at 847–50. In doing so, the court found numerous questions of fact surrounding the staff's conduct and concluded that "the lower court should have considered the [staff's] duty to provide reasonable safety for the decedent under a heightened Fourteenth Amendment standard." *Id.* at 850. The Sixth Circuit thus remanded the case and instructed the district court "to conduct a trial on plaintiff's claims against *each* named defendant under the Fourteenth Amendment standard." *Id.*

Despite its Eighth Amendment discussion, *Terrance* should not be read as endorsing the view that a state psychiatric patient's rights are governed by the Eighth Amendment. In addition to being inconsistent with *Youngberg* and *Lanman*, such an interpretation would warp the central holding in *Terrance*: that involuntarily committed individuals alleging inadequate treatment are entitled to the heightened protection of the Fourteenth Amendment. *See Terrance*, 286 F.3d at 848; *see also Johnson*, 2017 WL 4236548, at *5 (discussing *Terrance* and observing that "individuals subject to involuntary civil commitment enjoyed heightened protection"). The court in *Terrance* even recognized that "[t]he involuntarily committed have greater rights regarding confinement under the Fourteenth Amendment than criminals are due under the Eighth Amendment." *Id.* at 848.

According to the foregoing authority, where, as here, the plaintiff was involuntarily committed to a state institution and complains of abuse during her period of commitment, her

rights are governed by the Fourteenth Amendment Due Process Clause. Count I of the Amended Complaint, alleging a violation of the Eighth Amendment, will therefore be dismissed.

2.

Having decided that the Fourteenth Amendment governs this case, the next issue is which standard should be applied to Defendants' conduct.

The Amended Complaint presents at least two theories of liability: inadequate medical care and excessive force.[2] Following *Terrance* and *Lanman*, such claims would seem governed by the general rule announced in *Youngberg*: that due process requires courts to "make certain that professional judgment in fact was exercised" in the care of involuntarily committed individuals. *Youngberg*, 457 U.S. at 321. With respect to whether professional judgment was exercised, decisions made by professionals are "presumptively valid," and liability may only be imposed where a decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

Recent developments in the law, however, preclude a straightforward application of the *Youngberg* standard.

In *Lanman*, the Sixth Circuit clarified that only "professionals" would be held to *Youngberg*'s "substantial departure" test. *Lanman* 529 F.3d at 684 (citing *Shaw v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir.1990)). "Nonprofessional" employees, such as the resident care aids in *Lanman*, would be subject "only to a deliberate indifference standard." *Id.* In other words, a

---

[2] The Amended Complaint does not identify either theory by name but does allege, among other things, that "Defendants acted with deliberate indifference and/or with the purpose of causing Plaintiff harm." ECF No. 12 at PageID.97. In her responsive briefing, Plaintiff more clearly casts her allegations in the parlance of excessive force and inadequate medical care. *See* ECF No. 18 at PageID.171 (reciting the "deliberate indifference" and "malicious and sadistic" standards).

nonprofessional care aid would only be held liable upon a showing that she "knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id.*

But *Lanman*'s application of the deliberate indifference standard to nonprofessionals would seem insupportable under current precedent—at least insofar as excessive force is alleged. At the time *Lanman* was decided, an excessive force claim under the Fourteenth Amendment was analyzed much like it would be under the Eighth Amendment. If the defendants were responding to a "rapidly evolving, fluid, and dangerous predicament," the plaintiff would have to show that they "acted maliciously and sadistically for the very purpose of causing harm," just as she would under the Eighth Amendment. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 131, 134 (6th Cir. 2014). But where the defendants had a "reasonable opportunity to deliberate," the question was whether they acted with "deliberate indifference towards the plaintiff's federally protected rights." *Id.*

The excessive force rubric that prevailed when *Lanman* was decided, however, is no longer applicable. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that a pretrial detainee alleging excessive force under the Fourteenth Amendment "must only show that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. In declining to impose the subjective test ordinarily applied under the Eighth Amendment, the Court noted that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* at 400. Therefore, in cases involving pretrial detainees, "there is no need to determine when punishment is unconstitutional," "as there might be in an Eighth Amendment case." *Id.* at 401.

Consistent with *Kingsley*, the Sixth Circuit now holds that an "excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment." *Clay v. Emmi*, 797

-10-

F.3d 364, 369 (6th Cir. 2015) (holding that involuntary committee's claim that police used excessive force in restraining him during mental health commitment was governed by objective standard of reasonableness). Courts must therefore ask whether the official's "actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 370.

It remains unclear whether *Kingsley* might also require a revision of the deliberate indifference test applied in Fourteenth Amendment cases alleging inadequate medical care. Indeed, despite recognizing that the continued validity of the subjective deliberate indifference test is in "serious doubt," *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018), the Sixth Circuit has declined to announce a new rule on multiple occasions, most recently in May of this year, *see Moderwell v. Cuyahoga Cty., Ohio*, 997 F.3d 653, (6th Cir. 2021); *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 570 (6th Cir. 2020). As a result, the conventional deliberate indifference standard remains the law of this circuit with respect to claims alleging inadequate medical care.

Based on the foregoing, each of Plaintiff's theories must be analyzed under a different standard. To sustain a claim for excessive force, Plaintiff must allege sufficient facts indicating that Defendant's use of force was objectively unreasonable under the circumstances. *Clay*, 797 F.3d at 369. To sustain a claim for inadequate medical care, Plaintiff must allege that Defendants, all of whom are apparently nonprofessionals,[3] knew of and disregarded a serious risk to her health or safety. *Lanman*, 529 F.3d at 684.

---

[3] Defendants state that Defendant Berlin is a nurse and therefore a professional, ECF No. 14 at PageID.126, but the Amended Complaint provides no facts supporting that claim. As a result, this Order assumes that Defendant Berlin is a nonprofessional, as to whom Plaintiff must plead deliberate indifference to sustain a claim of inadequate medical care.

**3.**

Though the Amended Complaint is sparse in detail, Plaintiff has narrowly carried her burden of alleging a plausible violation of the Fourteenth Amendment against each Defendant.

First, Plaintiff plausibly alleges that Defendant Berlin was deliberately indifferent to her serious medical needs or, alternatively, used excessive force in restraining her.[4] Plaintiff claims that, on more than one occasion, Defendant Berlin restrained her "without performing necessary circulation checks, resulting in injury." ECF No. 12 at PageID.93. Because Plaintiff does not specify how long she was restrained or what sort of injury she sustained, Defendants argue that the duration of restraint might have been trivial. ECF No. 14 at PageID.119. While Plaintiff's allegations lack valuable context, this Court must construe them in the light most favorable to Plaintiff and draw all reasonable inferences in her favor. *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017). Viewing the Amended Complaint in such a manner, one could infer that Defendant Berlin knew of and disregarded a serious risk to Plaintiff's health or safety when she restrained her without reason and without performing necessary circulation checks. This conclusion is buttressed by the allegation that Defendant Berlin "tormented" Plaintiff with harassing comments, ECF No. 12 at PageID.93, which might suggest some personal animosity between the two. Similarly, given the deferential standard at this stage, one could also infer that her use of restraints was objectively unreasonable under the circumstances.

Plaintiff's allegation that Defendant Jones knelt on Plaintiff's chest causing "severe injury" is also sufficient. The Sixth Circuit has long recognized that kneeling on the torso of a restrained

---

[4] To be sure, claims for inadequate medical care and for excessive force typically address different kinds of conduct. While "excessive force requires proof of an affirmative act[,] denial of medical care generally is an act of neglect." *Herriges v. Cty. of Macomb*, No. 19-12193, 2020 WL 3498095, at *6 (E.D. Mich. June 29, 2020). Presumably, discovery will shed greater light on how the conduct at issue should be characterized.

person may constitute excessive force. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) ("Creating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force."); *Lanman*, 529 F.3d at 685 (testimony that mental hospital staff knelt on decedent's body precluded summary judgment as to deliberate indifference claim). Though additional context will be necessary at the summary judgment stage, Plaintiff's allegation, when construed in the manner most favorable to her, is sufficient for purposes of Rule 12(b)(6).

The same is true for the allegations against Defendants Wicks and Spicer. Indeed, a reasonable juror might infer that Defendants Wicks and Spicer knew of and disregarded a serious risk to Plaintiff's health and safety where they threw her to the ground, dragged her by her arms and legs, and then, after being suspended for their actions, told her, "Thanks for the paid vacation." ECF No. 12 at PageID.93–94. The same allegations would also support an inference of excessive force, given the lack of any facts suggesting that such force was reasonable under the circumstances.

It bears noting that Plaintiff's allegations, though sparsely detailed in some instances, are enhanced by the claim that at least some of Defendants' misconduct was "substantiated" by the Caro Center's Office of Recipient Rights and Michigan Protection & Advocacy Service, Inc. ECF No. 12 at PageID.92. While it remains unclear which specific misconduct was substantiated, such an allegation tends to strengthen the plausibility of Plaintiff's central claims. *See Terrance*, 286 F.3d at 850 ("[W]here hospital staff admittedly fail to follow institutional policies and procedures, questions about the State's adherence to accepted professional conduct are not unwarranted."); *see also Twombly*, 550 U.S. at 556 ("Asking for plausible grounds . . . does not impose a probability

requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].").

For the foregoing reasons, Plaintiff has plausibly alleged that each Defendant deprived her of substantive due process. As a result, she has successfully stated a claim for relief under 42 U.S.C. § 1983.

## C.

In addition to arguing that the Amended Complaint fails to state a claim, Defendants contend that the case should be dismissed because they enjoy qualified immunity. ECF No. 14 at PageID.129. However, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [state actor's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 434–35 (6th Cir. 2015) (collecting cases) (internal citations and quotation marks omitted). Courts may dismiss a complaint at the pleading stage on the basis of qualified immunity "only if it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings." *Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005).

This is not such a case. As discussed above, the exact circumstances of Defendants' conduct remain unclear. Said circumstances will be material in deciding whether Plaintiff can prove the violation of a clearly established right. Therefore, Defendants' assertion of qualified immunity is best addressed after discovery.

**D.**

Defendants also argue that at least some of Plaintiff's claims are time-barred. Specifically, they argue that because Plaintiff filed her original complaint on December 24, 2020, and the statute of limitations for a § 1983 claim in Michigan is three years, any claim based on events occurring before December 24, 2017 is time-barred. ECF No. 14 at PageID.130 (citing *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005)). Defendants note that at least one incident of undue restraint involving Defendant Berlin is alleged to have occurred on November 14, 2017. ECF No. 14 at PageID.131.

Because the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), a motion to dismiss is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Only when "the allegations in the complaint affirmatively show that the claim is time-barred . . . [,] [is] dismissing the claim under Rule 12(b)(6) [] appropriate." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

In her response brief, Plaintiff argues that the statute of limitations was tolled from July 2017 until October 2020 by reason of her insanity. ECF No. 18 at PageID.191–93. Plaintiff cites M.C.L. § 600.5851, which tolls the statute of limitations where "the person first entitled to make an entry or bring an action . . . is under 18 years of age or insane at the time the claim accrues." M.C.L. § 600.5851(1). She explains that shortly after her involuntary commitment in July 2017, the Tuscola County Probate Court appointed a guardian because Plaintiff "lacked sufficient understanding or capacity to make or communicate informed decisions." *Id.* at PageID.192. That guardianship allegedly ended in October 2020. *Id.*

Based on the foregoing, Plaintiff's allegations do not "affirmatively show" that her claims are time-barred. *Cataldo*, 676 F.3d at 547. The Amended Complaint reveals only one incident of undue restraint occurring before December 24, 2017, and whether Plaintiff was insane for purposes of M.C.L. § 600.5851 at that time or at any other point during her treatment at the Caro Center cannot be determined on the current record. Defendants may renew their statute of limitations defense after discovery.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Second Motion to Dismiss, ECF No. 14, is **GRANTED IN PART AND DENIED IN PART**. Count I of the Amended Complaint, ECF No. 12, alleging a violation of the Eighth Amendment, is **DISMISSED**. Count II alleging a violation of the Fourteenth Amendment may proceed.

It is further **ORDERED** that Defendant's First Motion to Dismiss, ECF No. 9, is **DENIED AS MOOT**.

Dated: June 23, 2021                     s/Thomas L. Ludington
                                                               THOMAS L. LUDINGTON
                                                               United States District Judge